UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER,<br><br>            Plaintiff,<br><br>    v.<br><br>KEVIN LEE,<br><br>            Defendant. | 2:19-cv-00365-JAM-CKD PS<br><br><u>ORDER TO SET ASIDE ENTRY OF DEFAULT</u><br><br>(ECF Nos. 18, 27, 28) |

Presently before the court are plaintiff Mark Aussieker's motion for default judgment against defendant Kevin Lee, and defendant's motion to set aside the Clerk's entry of default against him. (ECF Nos. 27, 28.) Both parties are proceeding pro se.[1] Oppositions were filed to both motions, along with defendant's reply in support of his motion to set aside, and the motions were taken under submission without oral argument pursuant to Local Rule 230(g). (ECF Nos. 29-32.) For the reasons discussed below, the court DENIES plaintiff's motion, GRANTS defendant's motion, and orders defendant to respond to the operative complaint.

**BACKGROUND**

Plaintiff filed this suit on March 1, 2019, and filed an amended complaint on May 23, 2019. (ECF Nos. 1, 5.) Plaintiff's amended complaint lists three causes of action for violations

---

[1] This matter is before the undersigned pursuant to Local Rules 302(c)(19) & (21).

1

of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (Id. at 11-13.)  Specifically, plaintiff asserts violations of the section of the TCPA that, as relevant to this case, makes it unlawful "to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii); see Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2344 (2020) ("In plain English, the TCPA prohibit[s] almost all robocalls to cell phones.").

Generally, plaintiff alleges that defendant Kevin Lee was "in charge of" corporations soliciting plaintiff with unwanted telemarketing phone calls.[2]  (ECF No. 5 at 2, 11.)  Plaintiff alleges that between October 2018 and February 2019 he received seven unsolicited calls from defendant or at defendant's direction in which offers were made to purchase plaintiff's property.  (Id. at 6-11.)  Plaintiff asserts that all of the calls were made using an automatic telephone dialing system ("ATDS")[3] and that some of the calls also played a prerecorded message.  (Id. at 8-11.)

On November 14, 2019, at plaintiff's request, the Clerk of Court entered default against defendant, based on plaintiff's proof of service indicating that defendant was served on August 22, 2019 by leaving a copy of the complaint and summons with defendant's commercial mail receiving agency.  (ECF Nos. 14, 15, 18.)  The court denied plaintiff's ensuing motions for default judgment, however, concluding that plaintiff had not properly effected service under Cal. Civ. Proc. § 415.20(c) and Cal. Bus. & Prof. Code § 17538.5(d)(1), in part because the commercial mailbox was not the "only address reasonably known for" defendant.  (ECF Nos. 20, 24, 25 at 3.)  The court denied the motion for default judgment without prejudice to its renewal upon a showing of effective service.  (ECF No. 25 at 4.)

On September 4, 2020, plaintiff filed a new return of service indicating that service was

---

[2] The amended complaint also named as defendant "InsightfulREI," which was voluntarily dismissed from the action in October 2019.  (ECF Nos. 16, 17.)

[3] The TCPA defines an ATDS as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  As discussed below in footnote 6, that definition is currently being reviewed by the Supreme Court.  See Facebook, Inc. v. Duguid, No. 19-511 (argued Dec. 8, 2020).

1  completed on August 31, 2020 by leaving a copy of the summons and amended complaint with a
2  John Doe adult "co-occupant" of a residence on Evening Star Court in Milpitas, California.  (ECF
3  No. 26.)  On December 1, 2020, plaintiff filed the instant motion for default judgment.  (ECF
4  No. 27.)  On December 11, 2020, defendant appeared for the first time in this litigation by filing
5  the instant motion to set aside the clerk's November 2019 entry of default.  (ECF No. 28.)
6  Defendant argues that his default should be set aside because he did not reside at the Evening Star
7  Court address listed on the most recent return of service, and he has a meritorious defense to
8  plaintiff's claims.  (ECF No. 28 at 1, 3.)

9  **DISCUSSION**

10         Under Rule 55(c), the court may set aside entry of default by the Clerk of the Court for
11  "good cause" shown.  Fed. R. Civ. P. 55(c); see Franchise Holding II v. Huntington Rests. Group,
12  Inc., 375 F.3d 922, 926 (9th Cir. 2004) (party seeking relief from entry of default bears burden of
13  showing good cause).  "Good cause" in this context is determined by three factors:  (1) whether
14  the party seeking to set aside the default " 'engaged in culpable conduct that led to the default;
15  (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default [] would
16  prejudice' the other party."  United States v. Signed Personal Check No. 730 of Yubran S. Mesle,
17  615 F.3d 1085, 1091–94 (9th Cir. 2010) ("Mesle") (modification in original) (quoting Franchise
18  Holding II, 375 F.3d at 925–26).

19         Satisfaction of any one of these factors is a sufficient reason for a court to refuse to set
20  aside a default.  Mesle, 615 F.3d at 1091.  However, a court may, within its discretion, grant relief
21  from default even after finding one of the "good cause" factors to be true.  See, e.g., Brandt v.
22  Am. Bankers Ins. Co., 653 F.3d 1108, 1112 (9th Cir. 2011) ("A district court may exercise its
23  discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's
24  culpability, *but need not*.") (emphasis added).  "The court's discretion is especially broad
25  where . . . it is entry of default that is being set aside, rather than a default judgment."  O'Connor
26  v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994).  This is because "there is no interest in the
27  finality of the judgment with which to contend."  Mesle, 615 F.3d at 1091 n.1.  Additionally, the
28  Ninth Circuit has emphasized that resolution of a motion to set aside the entry of default is

necessarily informed by the well-established policies favoring resolution of cases on their merits and generally disfavoring default judgments. See id. at 1091 ("Crucially, . . . judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.") (citations and quotation marks omitted); Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183, 1189 (9th Cir. 2009) ("As a general rule, default judgments are disfavored; cases should be decided upon their merits whenever reasonably possible."). Moreover, the Ninth Circuit's "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." Mesle, 615 F.3d at 1089.

In addition to the three-factor analysis, a clerk's entry of default may also be set aside as void when default has been entered without proper service of process. See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (holding that because service of process on a party in an earlier action against whom a default judgment was entered was not proper, the default judgment in the earlier action was void and had no preclusive effect in the present action); accord James v. Scribner, 415 Fed. Appx. 835, 836 (9th Cir. 2011); see also Banks v. ACS Educ., No. 10-cv-1886-BTM (CAB), 2011 WL 811601, at *1 (S.D. Cal. Mar. 2, 2011) ("Improper service of the complaint presents good cause to set aside entries of default."); Warren v. City of Grass Valley, No. 2:10–CV–1650–JAM–EFB, 2011 WL 596707, at 1–2 (E.D. Cal. Feb. 9, 2011) (setting aside entry of default based on insufficient evidence of proper service of process).

The parties hotly contest whether plaintiff has finally—after several attempts over the years—properly served defendant, this time via the substitute service effort in August 2020.[4] However, because the court concludes that defendant has otherwise shown good cause for setting

---

[4] In short, defendant maintains that the Evening Star Court address does not belong to him, as he was living on Wyda Way in Sacramento, California from December 2017 until September 2020. (ECF No. 32 at 2; see ECF No. 28 at 4, 6.) The court notes that defendant continues to list the same Wyda Way address as his address of record on all of his filings in this case. Plaintiff, on the other hand, insists that the Evening Star Court address where his process server delivered the summons and complaint must be defendant's "dwelling or usual place of abode," see Fed. R. Civ. P. 4(e)(2)(B), based on public records documenting the conveyance of that real property to defendant's trust and based on the John Doe service recipient's purported confirmation to the process server that defendant resided there but was not home. (ECF Nos. 30 at 2-3 & 27 at 21.)

4

aside the entry of default under the three-factor analysis and defendant has now submitted to the court's personal jurisdiction, the court need not resolve whether service was properly effected in this case.[5] Instead, the court proceeds to consider each of the "good cause" factors, with the above principles in mind.

### A. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001). In the default judgment context, "culpable" involves "not simply nonappearance following receipt of notice of the action, but rather conduct which hinder[s] judicial proceedings[.]" Id. at 698 (internal quotation marks omitted). Central to this inquiry is whether a party failed to respond in order to "obtain a strategic advantage," which would further evidence bad faith. Id. Similarly, "a defendant's neglectful failure to answer, without more, is typically not 'culpable' unless there is no explanation of the default inconsistent with a devious, willful, or bad faith failure to respond." Id. (internal quotation marks omitted).

Defendant avers that, because of the prior ineffective service attempts, he only learned of this lawsuit on November 24, 2020 when a "legal acquaintance" informed him that plaintiff was pursuing default judgment against him. (ECF Nos. 28 at 6, 32 at 2.) Plaintiff counters that both the substitute service and prior commercial mailbox service attempts were effective, and argues that plaintiff had notice of the action because plaintiff emailed him in September 2019 and November 2020. (ECF Nos. 27 at 18, 30 at 1-3.) But plaintiff does not otherwise argue that defendant's previous non-responsiveness meets the Ninth Circuit's definition of "culpable" conduct; and the court cannot conclude on this record that defendant, who (like plaintiff) is

---

[5] "[A] general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) (A general appearance "ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear."). See ECF No. 28 at 6 (requesting adjudication of the case resulting in dismissal with prejudice); ECF No. 32 at 1 ("Defendant would like to argue the substantive nature of the case and seek Judge's final ruling on it to close the case once for all.").

proceeding without counsel, acted willfully or in bad faith by not participating in this litigation sooner.

### B. Meritorious Defense

The Ninth Circuit has stated that, at least in the context of seeking relief from default judgment, the defaulting defendant must "present the district court with specific facts that would constitute a defense." Franchise Holding II, 375 F.3d at 926. However, this burden "is not extraordinarily heavy." TCI Group, 244 F.3d at 700. To satisfy the "meritorious defense" requirement a party must simply "allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Rather, that question 'would be the subject of the later litigation.' " Mesle, 615 F.3d at 1094 (modification in original) (quoting TCI Group, 244 F.3d at 700).

Defendant raises several potential defenses to plaintiff's claims, only one of which satisfies the "meritorious defense" requirement. First, defendant argues that this litigation is barred because plaintiff already brought the same claims against him in a prior state court case that was dismissed. (ECF No. 28 at 4-5 (referencing Superior Court of California, County of Sacramento Small Claims Case No. 19SC00702).) To succeed on a *res judicata* defense such as this, defendant would have to show "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005).

Attached to his opposition to defendant's motion to set aside, plaintiff has provided a copy of the dismissal order and judgment in a case bearing the same case number identified by defendant and listing Kimberly Aussieker (plaintiff's wife) as plaintiff and Kevin Lee as defendant. (ECF No. 30 at 14-16 (Ex. C).) That case—also involving alleged TCPA violations—was dismissed without prejudice on April 8, 2019, with a notation that Mr. Lee had not been served. (Id. at 14.) The Notice of Entry of Judgment clearly states that plaintiff's "Claim was Dismissed Without Prejudice." (Id. at 16.) This dooms defendant's proffered *res judicata* defense, because a dismissal without prejudice is not an adjudication on the merits and "does not

have a *res judicata* effect." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990). Given that the Small Claims case was dismissed without prejudice—apparently for lack of service—that court's dismissal judgment did not preclude plaintiff from re-filing suit for the same claims, including in this court.

Defendant also challenges plaintiff's claims on the merits, however, convincing the court that a meritorious defense may exist at least for some of the claimed violations. "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an [ATDS or an artificial or prerecorded voice]; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)).

Primarily, defendant contests the sufficiency of plaintiff's factual allegations supporting the various asserted TCPA violations—arguing that the alleged calls were not placed using an ATDS[6] and did not contain prerecorded messages. (ECF No. 31 at 2 (asserting that certain text messages were composed and sent manually by a human); ECF No. 32 at 2-4.) If true, these assertions would constitute a meritorious defense to the alleged violations stemming from the challenged calls, since they would defeat one element of the TCPA claim. See Meyer, 707 F.3d at 1043. At this juncture, the court need not parse which calls would or would not ultimately survive such a defense. The undersigned simply finds that defendant has proffered specific facts suggesting a potentially meritorious defense to the ATDS/prerecorded voice element of at least some of plaintiff's TCPA claims. This warrants setting aside the clerk's entry of default.

////

---

[6] Defendant draws the court's attention to the Supreme Court's grant of certiorari in Facebook, Inc. v. Duguid, No. 19-511 (cert. granted July 9, 2020), to resolve a circuit split regarding what constitutes an ATDS. (ECF No. 31 at 4.) Oral arguments in the case were heard on December 8, 2020, and a decision is expected within the first half of this year. The parties are well advised to keep abreast of the Court's decision in Duguid, which may impact whether the communications at issue here were sent using an ATDS. Unless and until the Supreme Court rules otherwise, this court is bound by the Ninth Circuit's current interpretation of the statute. See Duguid v. Facebook, Inc., 926 F.3d 1146, 1151 (9th Cir. 2019) ("[A]n ADTS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and to 'dial such numbers automatically.' ") (quoting Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1053 (9th Cir. 2018)), cert. granted in part, 141 S. Ct. 193 (2020).

For the benefit of the pro se parties, the court also briefly addresses two points of TCPA law relevant to some of defendant's additional arguments. First, text messages are calls under the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009). Second, despite the phrasing of the elements in Meyer, the Ninth Circuit has clarified that "prior express consent is an affirmative defense, not an element of a TCPA claim." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 & n.3 (9th Cir. 2017). The burden of proof thus lies with defendant. Id. In considering whether to formally assert this affirmative defense, which is mentioned several times in defendant's present filings, defendant should bear in mind that if a call (or text message) he "[i]nitiate[d], or cause[d] to be initiated, . . . includes or introduces an advertisement or constitutes telemarketing," the sender is required to obtain "prior express *written* consent" of the recipient. 47 C.F.R. § 64.1200(a)(1) and (2) (emphasis added). See An Phan v. Agoda Co. Pte. Ltd., 351 F. Supp. 3d 1257, 1261–62 (N.D. Cal. 2018) (explaining how the content of the message dictates the type of consent required), aff'd, 798 F. App'x 157 (9th Cir. 2020).[7] If the call/text does not contain advertising and is not telemarketing, the "prior express consent" need not be in writing. See id. at 1262 ("A consumer must only 'knowingly' agree to receive such messages by providing [their] phone number for the reasons served by the message (i.e., to transact the business contemplated when the recipient provided [their] number)." (citing Van Patten, 847 F.3d at 1044-45)). Of course, it remains plaintiff's burden to adequately plead—and ultimately prove—that defendant (or his agent) placed the calls/texts in the first place, and it appears from defendant's arguments thus far that there may be further debate over whether defendant "initiated" the calls or texts so as to require prior express consent *in writing*. See 47 C.F.R. § 64.1200(a)(2).[8]

---

[7] The applicable regulation defines "advertisement" as "material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). It defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Id. § 64.1200(f)(12). If a call or text message contains advertising or is telemarketing, the sender must have secured, prior to sending the message or making the call, the signature of the recipient in a written agreement that includes several specified disclosures. See 47 C.F.R. § 64.1200(f)(8).

[8] Defendant also asks the court to close the door on this suit because plaintiff's numerous prior TCPA lawsuits against other entities—often resolved by default judgment—indicate that plaintiff

Whether plaintiff's or defendant's legal theories ultimately win the day remains to be seen as this litigation proceeds. But because defendant has asserted at least one potentially meritorious defense, this factor weighs in favor of granting defendant's request to set aside the default.

### C. Prejudice

"To be prejudicial, the setting aside of a judgment [or clerk's entry of default] must result in greater harm than simply delaying resolution of the case." Mesle, 615 F.3d at 1095. Rather, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." TCI Group, 244 F.3d at 701 (citing Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433–34 (6th Cir. 1996) (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion").). Merely being forced to litigate on the merits cannot be considered prejudicial in this context. Id.

Plaintiff argues that allowing this case to proceed would prejudice him because, with nearly two years having passed since suit was filed, "electronic evidence . . . may be lost or destroyed." (ECF No. 30 at 4.) Plaintiff contends that certain arguments defendant makes indicate that one of the phone numbers used in the "calling campaign" has already been re-assigned back to the phone provider; and plaintiff would have difficulty subpoenaing the proper party "since the carriers have changed and perhaps records are gone." (Id.) This limited argument does not convince the court that setting aside entry of default would be so prejudicial as to warrant denying such relief. Aside from the hypothetical nature of the supposed loss of evidence, the court notes that much of the delay in moving this case to final judgment can be attributed to plaintiff's own conduct. Plaintiff waited nearly three months after the clerk's entry of default to move for default judgment the first time (ECF Nos. 18-20), and took nearly six months to renew his motion for default judgment despite having completed the substitute service within three months (ECF Nos. 25-27).

Plaintiff's only other argument for prejudice is that "it would be a huge burden" to prove

---

is exploiting the statute for personal gain. (See ECF No. 31 at 1-2, 4.) Although plaintiff is well known in this district for his TCPA suits, the numerosity of his prior lawsuits cannot be held against him, given Congress's decision to incentivize private enforcement of the TCPA's requirements.

9

certain aspects of one of his claims. (ECF No. 30 at 4.) This is plainly insufficient because, "had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so." TCI Group, 244 F.3d at 701 (noting that default judgment gives plaintiffs a windfall and "vacating the default judgment merely restores the parties to an even footing in the litigation"). Accordingly, the court finds that any potential prejudice from setting aside the entry of default would be minimal. See Francois & Co., LLC v. Nadeau, 334 F.R.D. 588, 599 (C.D. Cal. 2020) (although more than a year had passed between entry of default and filing of motion to set aside, and it had been nearly two years since suit was filed, this "undoubted[] inconvenience" "[did] not constitute cognizable prejudice" under Mesle and TCI Group).

In sum, taking all three factors into consideration, the court finds that defendant has shown good cause to set aside the Clerk's entry of default. In addition to the three factors discussed above, the undersigned gives great weight to the established policies favoring resolution of claims on the merits and disfavoring default judgments, especially when a pro se party is the subject of the default.

**CONCLUSION**

Accordingly, it is HEREBY ORDERED that:

1. Defendant's motion to set aside the Clerk's entry of default against him (ECF No. 28) is GRANTED; the default entered on November 14, 2019 (ECF No. 18) is SET ASIDE;
2. Plaintiff's motion for default judgment (ECF No. 27) is DENIED as moot; and
3. Within 21 days of the date of entry of this order, defendant shall file his response to the operative first amended complaint.

Dated: February 2, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.365.auss